1    ELLEN MAHAN
     Deputy Chief
2    Environmental Enforcement Section
     Environment & Natural Resources Division
3    United States Department of Justice

4    THOMAS P. O'BRIEN
     United States Attorney
5    MONICA MILLER
     Assistant United States Attorney
6    Central District of California

7    JAMES W. BEERS, JR.
     E-mail:  james.beers@usdoj.gov
8    District of Columbia Bar Number 488960
     Environmental Enforcement Section
9    Environment & Natural Resources Division
     United States Department of Justice
10   P.O. Box 7611
     Washington, D.C.  20044
11   Telephone:  (202) 305-0455
     Facsimile:  (202) 514-2583

12

13   Attorneys for the United States of America

JS-6

14

15                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

16

17   UNITED STATES OF AMERICA,

18                  Plaintiff,

19            v.                              Case No.  CV08-01284 ABC (JCRx)

20   RIVERSIDE CEMENT COMPANY,        **CONSENT DECREE OF
                                      PLAINTIFF AND DEFENDANT**
21                  Defendant.

22

23          **CONSENT DECREE OF PLAINTIFF AND DEFENDANT**

            WHEREAS, Plaintiff United States of America ("United States"), on behalf
24
     of the United States Environmental Protection Agency ("EPA"), concurrently with
25
     lodging this Consent Decree, has filed a complaint (the "Complaint") in this action
26
     pursuant to Section 113(b) of the Clean Air Act (the "Act"), 42 U.S.C. § 7413(b),
27
     alleging that Riverside Cement Company ("RCC" or "Defendant") has operated its
28

portland cement manufacturing facility in Oro Grande, California (the "Facility") in violation of: (1) Section 112 of the Act, 42 U.S.C. § 7412, and the regulations promulgated thereunder at 40 C.F.R. Part 63, Subparts A and LLL; (2) Rule 1161 of the Mojave Desert Air Quality Management District ("MDAQMD" or "District"), as incorporated in California's applicable implementation plan ("SIP"); and (3) requirements in the operating permit (the "Title V permit") issued for the Facility pursuant to Title V of the Act, 42 U.S.C. §§ 7661-7661f;

WHEREAS, the Complaint alleges that Defendant violated Section 112 of the Act, 42 U.S.C. § 7412, and the implementing regulations at 40 C.F.R. Part 63, Subparts A and LLL, by exceeding the applicable kiln temperature limits in 40 C.F.R. §§ 63.1344 and 63.1349(3)(iv); by exceeding the applicable opacity limits in 40 C.F.R. § 63.1348; by failing to perform Method 9 visual opacity tests as required by 40 C.F.R. § 63.1350(e); by failing to have a startup, shutdown, and malfunction plan that complied with 40 C.F.R. § 63.6(e)(3)(i); and by failing to operate and maintain, at all times, all affected sources at the Facility in a manner consistent with good air pollution practices for minimizing emissions;

WHEREAS, the Complaint alleges that Defendant violated MDAQMD Rule 1161 by exceeding the nitrogen oxides ("NOx") emission limit applicable to short dry kilns;

WHEREAS, the Complaint alleges that Defendant violated requirements of the Title V permit by failing to maintain pressure differential measurement devices on all baghouses and dust collectors at the Facility; by failing to perform required weekly measurements of the pressure differential of dust collectors; and by failing to perform required quarterly inspections on all equipment associated with baghouses and dust collectors;

WHEREAS, Defendant does not admit any of the allegations of the Complaint and does not admit any liability to the United States arising out of the violations alleged in the Complaint;

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

1    WHEREAS, this Consent Decree does not constitute an admission of either

2  any facts or liability by Defendant; and

3    WHEREAS, the United States and Defendant, collectively the "Parties,"

4  recognize, and the Court by entering this Consent Decree finds, that this Consent

5  Decree has been negotiated by the Parties in good faith and will avoid litigation

6  among the Parties and that this Consent Decree is fair, reasonable, and in the public

7  interest;

8    NOW, THEREFORE, before the taking of any testimony, without the

9  adjudication of any issue of fact or law, and with the consent of the Parties, IT IS

10  HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

11  **I. JURISDICTION AND VENUE**

12    1.    This Court has jurisdiction over the subject matter of this action and

13  over the Parties pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and

14  28 U.S.C. §§ 1331 and 1345.  Venue lies in this District pursuant to 28 U.S.C.

15  § 1391(b) and 42 U.S.C. § 7413(b), because the violations averred in the Complaint

16  are alleged to have occurred in this judicial district.  For purposes of this Decree, or

17  any action to enforce this Decree, Defendant consents to the Court's jurisdiction

18  over this Decree and any such action and over Defendant and consents to venue in

19  this judicial district.

20    2.    For purposes of this Consent Decree, Defendant agrees that the

21  Complaint states claims upon which relief may be granted pursuant to

22  Section 113(b) of the Act, 42 U.S.C. § 7413(b), for violations of Section 112 of the

23  Act, 42 U.S.C. § 7412, and its implementing regulations at 40 C.F.R. Part 63,

24  Subparts A and LLL; MDAQMD Rule 1161, as incorporated in the California SIP;

25  and requirements in the Title V permit, although Defendant does not admit the

26  violations alleged in the Complaint.

27    3.    Notice of the commencement of this action has been given to the

28  District, as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

## II.  APPLICABILITY AND BINDING EFFECT

4.     The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

5.     No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented. Any transfer of ownership or operation of the Facility to any other person must be conditioned upon the transferee's agreement to undertake the obligations required by this Decree, as provided in a written agreement between Defendant and the proposed transferee, enforceable by the United States.  At least 30 days prior to any such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written transfer agreement, to EPA Region IX and the United States Department of Justice ("DOJ"), in accordance with Section XIV of this Decree (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

6.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.  DEFENDANT

7.     Defendant is a general partnership formed under the laws of the state of California.  Defendant is a "person," as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e), and federal, state and local regulations promulgated pursuant to the Act.

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

985842.1

8.    Defendant owns and operates the Facility.  The Facility is a "portland cement plant," as defined in 40 C.F.R. § 63.1341.  The requirements of 40 C.F.R. Part 63, Subpart LLL (the "Portland Cement NESHAP") apply to the Facility.

9.    The Facility emits several air pollutants during the portland cement manufacturing process, including NOx, carbon monoxide ("CO"), and sulfur dioxide ("$SO_2$").

10.    The Facility is a "major source," as defined in Sections 112(a)(1) and 501(2) of the Act, 42 U.S.C. §§ 7412(a)(1), 7611(2), and the federal, state, and local regulations promulgated pursuant to the Act.

## IV.  DEFINITIONS

11.    Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

A.    "Baghouse" shall mean an air pollution control device used to trap particulates by filtering gas streams through large fabric bags usually made of cloth or glass fibers;

B.    "Complaint" shall mean the complaint filed concurrently by the United States with the lodging of this Consent Decree;

C.    "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto.  In the event of any conflict between the Decree and any appendix, this Decree shall control.

D.    "Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

985842.1

E.     "Defendant" shall mean Riverside Cement Company and its successors and assigns.

F.     "District" or "MDAQMD" shall mean the Mohave Desert Air Quality Management District.

G.     "Effective Date" shall mean the date upon which this Decree is entered by the Court.

H.     "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

I.     "Facility" shall mean RCC's portland cement manufacturing facility located at 19409 National Trails Highway, Oro Grande, San Bernardino County, California.

J.     "New Cement Kiln" shall mean the cement kiln and preheater being constructed by Defendant, as more particularly described in Authority to Construct permit B007435, issued by the District and extended on May 30, 2007.

K.     "Old Cement Kilns" shall mean the seven short dry cement kilns that will be shut down and replaced by the New Cement Kiln.

L.     "Operating Capacity" shall mean the design mass of clinker production rate.

M.     "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

N.     "Parties" shall mean the United States and the Defendant;

O.     "Rule 1161" shall mean MDAQMD Rule 1161, as approved by EPA and incorporated into the federally enforceable California applicable implementation plan.

P.     "Section" shall mean a portion of this Decree identified by a Roman numeral.

- 6 -

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

985842.1

Q.     "Shakedown" shall mean a period of testing under operating conditions immediately after the initial startup of a new emissions unit or control device.  A shakedown period shall not exceed 180 days.

R.     "Startup for Purposes of Shakedown" shall mean to operate the New Cement Kiln for limited periods of time to test its ability to operate.

S.     "Startup for Purposes of Production" shall mean to operate the New Cement Kiln for longer periods of time with continuous production of cement clinker with the intent to achieve production rates of 90 percent or greater than the rated capacity of the New Cement Kiln.

T.     "State" shall mean the state of California and all of its departments and agencies.

U.     "United States" shall mean the United States of America and all of its departments and agencies.

## V.  CIVIL PENALTY

12.     Within 30 days after the Effective Date of this Consent Decree, Defendant shall pay a civil penalty to the United States in the sum of $394,000, together with interest accruing thereon from the date on which the Consent Decree is lodged with the Court, at the rate specified pursuant to 28 U.S.C. § 1961 as of the date of lodging.

13.     Payment of the civil penalty shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following lodging of the Consent Decree, by the Financial Litigation Unit of the United States Attorney's Office for the Central District of California.  At the time of payment, Defendant shall provide written notice of payment and a copy of any transmittal documentation, which shall

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

reference DOJ case number 90-5-2-1-09021 and the civil action number of this case, to the United States in accordance with Section XIV of this Decree (Notices).

14.     Defendant shall not deduct the civil penalty paid under this Section in calculating its federal income tax.

## VI.  INJUNCTIVE RELIEF

Compliance Requirements

15.     Defendant shall at all times comply with the Portland Cement NESHAP, MDAQMD Rule 1161, and Title V of the Act.

Inspection Requirements

16.     Beginning no later than the date of lodging and continuing until the termination of this Consent Decree, Defendant shall conduct weekly visible emissions observations at all baghouses identified in Exhibit A and monthly visible emission observations at all baghouses identified in Exhibit B.  All visible emissions observation performed under this section shall be in accordance with the procedures of Method 22 of appendix A to 40 C.F.R. Part 60.

17.     If visible emissions are observed during any Method 22 test, Defendant shall conduct a visual opacity test from each stack from which emissions were observed, in accordance with the procedures of Method 9 of appendix A to 40 C.F.R. Part 60.  The duration of the Method 9 test shall be 6 minutes.

18.     If opacity greater than one-half of the applicable opacity limit as set forth in Exhibits A and B is observed during any Method 9 test, Defendant shall inspect the integrity and operation of the baghouse from which such opacity was observed within 48 hours of the visual emissions observation.

19.     All deficiencies identified in the operation and maintenance of a baghouse during an inspection conducted pursuant to Paragraph 18 must be corrected within 3 days.  Such deficiencies in operation and maintenance specifically include but are not limited to any deficiency that requires Defendant to repair or to replace a baghouse bag.

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

20.　　For any deficiencies identified during an inspection conducted pursuant to Paragraph 18 that cannot be corrected within 3 days, Defendant shall, within 10 days after identifying such deficiencies, submit to EPA, by electronic mail, a statement of work to correct the identified deficiencies.  The statement shall be subject to EPA review and approval and shall describe in detail the deficiencies identified during the inspection, the repair work to be conducted, and a schedule for completing such work.

21.　　After reviewing a statement of work submitted pursuant to the preceding Paragraph, EPA shall approve the submission or decline to approve it and provide written comments.  Within 10 days of receiving EPA's written comments, Defendant shall either: (i) alter the statement of work consistent with EPA's written comments and provide the re-submission to the EPA for final approval, or (ii) submit the matter for dispute resolution under Section X of this Decree.  Upon receipt of EPA's final approval of the submission or upon completion of the submission pursuant to dispute resolution, Defendant shall take all actions required by the approved statement of work in accordance with the schedule therein.

22.　　Any stipulated penalties applicable to the original submission, as provided in Section VIII of this Decree, shall continue to accrue during the 10-day period after which Defendant receives EPA's comments but shall not be payable unless the resubmission is untimely or is disapproved; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

<u>Shutdown of Old Cement Kilns</u>

23.　　Defendant shall shut down the Old Cement Kilns by no later than 120 days after the New Cement Kiln reaches 90 percent of its Operating Capacity on a continuous basis.  In no event shall the Old Cement Kilns continue to operate after August 31, 2008.

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

## VII.  REPORTING REQUIREMENTS

24.     Defendant shall notify EPA, by electronic mail, no less than 10 days after the occurrence of each of the following events or, in the case of subparagraphs a through d, within 10 days after RCC's approval of those actions by its contractor, whichever is later:

    a.     Completion of construction of the New Cement Kiln;

    b.     Startup for Purposes of Shakedown;

    c.     Startup for Purposes of Production;

    d.     New Cement Kiln reaching 90% of its Operating Capacity;

    e.     Shutdown of operation of the Old Cement Kilns; and

    f.     Surrender of operating permits for the Old Cement Kilns.

The notice provided under this Paragraph shall contain sufficient information so that EPA is able to verify that each listed event occurred, the date of such occurrence, and when the next listed event is anticipated to occur.

25.     Defendant shall submit to EPA, by electronic mail, a monthly report of all Method 22 tests, Method 9 tests, and baghouse inspections conducted pursuant to Paragraphs 16 through 18 of this Decree.  The first monthly report submitted under this Paragraph shall be due on the 15th day of the month following the month during which this Consent Decree is lodged with the Court and on the 15th day of each month thereafter until the Termination of this Decree.  The monthly report shall contain the results of all Method 22 and Method 9 tests conducted, as well as a copy of the checklist with comments prepared by opacity readers within twenty-four (24) hours of any baghouse inspections.  The monthly report shall also notify EPA of the status of any corrective action undertaken during the preceding month pursuant to Paragraphs 19 or 20 of this Decree.

26.     Defendant shall notify EPA, by electronic mail, of any rule variances applied for and obtained from the District.  Such notice shall be due 10 days after date on which the District issues approval for the request for variance.  Any report

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

submitted under this Paragraph shall contain copies of Defendant's application for variance, including any attachments thereto, as well as the District's formal decision granting the variance.

27. If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify EPA of such violation and its likely duration, in writing, within 10 working days of the day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 days of the day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section IX of this Consent Decree (Force Majeure).

28. Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraphs.

29. Each report required under this Section shall be submitted to EPA by electronic mail, in accordance with Section XIV of this Decree (Notices).

30. Each report submitted by Defendant under this Section shall be signed by the Facility plant manager or his designee and include the following certification:

I certify under penalty of law that this document and all

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

31.    The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

32.    Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

### VIII.  STIPULATED PENALTIES

33.    Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX of this Decree (Force Majeure).  A violation includes failing to perform specified obligations required by the terms of this Decree according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

- 12 -

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

985842.1

34.     If Defendant fails to pay the civil penalty to the United States required to be paid under Section V of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1,000 per day for each day that the penalty is late.

35.     For each failure to comply with any requirements of Paragraphs 15 to 23 of Section VI (Injunctive Relief), Defendant shall pay a stipulated penalty for each violation as follows:

| Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $500 | 1st through 15th day |
| $1,000 | 16th through 30th day |
| $1,500 | 31st day and beyond |

36.     For each failure to timely submit any report required by Section VII (Reporting Requirements), or for submitting any report that does not substantially conform to its requirements, Defendant shall pay a stipulated penalty of $500 per day for each day that the report is late.

37.     Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Nothing herein shall prevent the simultaneous accrual of separate Stipulated Penalties for separate violations of this Consent Decree.

38.     Defendant shall pay any stipulated penalty within 30 days of receiving the United States' written demand for such penalty.

39.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due under this Consent Decree.

40.     Stipulated penalties shall continue to accrue, as provided in Paragraph 37, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement in accordance with Paragraph 51, infra, or by a decision of EPA that is not appealed to the

Court (see Paragraph 54, <u>infra</u>), Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 days of the Effective Date of the agreement or the receipt of EPA's decision.

b.      If the dispute is appealed to the Court in accordance with Paragraph 54, and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 days of receiving the Court's decision or order, except as provided in Subparagraph (c), below.

c.      If any Party appeals the Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 days of receiving the final appellate court decision.

41.     Within 30 days of receiving the United States' demand under Paragraph 38 but no earlier than 30 days after the Effective Date of this Decree, Defendant shall pay stipulated penalties for violations of this Consent Decree occurring between the date of lodging or March 1, 2008, whichever is later, and the Effective Date of this Consent Decree provided, however, that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until the Decree is entered by the Court.  Notwithstanding the foregoing, no stipulated penalties shall accrue prior to the Effective Date of this Consent Decree for any violations alleged under Paragraph 15 with respect to the operation of the Old Cement Kilns and the associated materials handling system.

42.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 13, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

985842.1

43.     Defendant shall not deduct stipulated penalties paid under this Section in calculating its federal income tax.

44.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

45.     Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Decree or applicable law.  Where a violation of this Consent Decree is also a violation of the Act or its implementing rules and regulations, Defendant shall be allowed a credit for any stipulated penalties paid against any statutory penalties imposed for such violation.

## IX.  FORCE MAJEURE

46.     For purposes of this Consent Decree, "Force Majeure" is defined as any event arising from causes beyond the control of the Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Decree despite Defendant's best efforts to fulfill the obligation.  "Best efforts" include anticipating any potential Force Majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

47.     Defendant shall provide notice to EPA orally or by electronic or facsimile transmission as soon as possible, but not later than 72 hours after the time Defendant first knew of, or by the exercise of due diligence, should have known of,

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

1    a claimed Force Majeure event.  Defendant shall also provide written notice to

2    EPA, as provided in Section XIV of this Decree (Notices), within 7 days of the time

3    Defendant first knew of, or by the exercise of due diligence, should have known of,

4    the event.  The notice shall state the anticipated duration of any delay; its cause(s);

5    Defendant's past and proposed actions to prevent or minimize any delay; a schedule

6    for carrying out those actions; and Defendant's rationale for attributing any delay to

7    a Force Majeure event.  Failure to provide oral and written notice as required by

8    this Paragraph shall preclude Defendant from asserting any claim of Force Majeure.

9        48.    If EPA agrees that a Force Majeure event has occurred, the United

10   States may agree to extend the time for Defendant to perform the affected

11   requirements for the time necessary to complete those obligations.  An extension of

12   time to perform the obligations affected by a Force Majeure event shall not, by

13   itself, extend the time to perform any other obligation.

14       49.    If EPA does not agree that a Force Majeure event has occurred, or does

15   not agree to the extension of time sought by Defendant, the United States' position

16   shall be binding, unless Defendant invokes Dispute Resolution under Section X

17   (Dispute Resolution).  In any such dispute, Defendant bears the burden of proving,

18   by a preponderance of the evidence, that each claimed Force Majeure event is a

19   Force Majeure event, that Defendant gave the notice required by Paragraph 47, that

20   the Force Majeure event caused any delay Defendant claims was attributable to that

21   event, and that Defendant exercised best efforts to prevent or minimize any delay

22   caused by the event.

23                    **X.  DISPUTE RESOLUTION**

24       50.    Unless otherwise expressly provided for in this Consent Decree, the

25   dispute resolution procedures of this Section shall be the exclusive mechanism to

26   resolve disputes arising under or with respect to this Consent Decree.  Defendant's

27   failure to seek resolution of a dispute under this Section shall preclude Defendant

28

CONSENT DECREE OF PLAINTIFF AND
                                                                 DEFENDANT

1  from raising any such issue as a defense to an action by the United States to enforce

2  any obligation of Defendant arising under this Decree.

3      51.    Informal Dispute Resolution.  Any dispute subject to Dispute

4  Resolution under this Consent Decree shall first be the subject of informal

5  negotiations.  The dispute shall be considered to have arisen when Defendant sends

6  the United States a written Notice of Dispute.  Such Notice of Dispute shall state

7  clearly the matter in dispute.  The period of informal negotiations shall not exceed

8  20 days from the date the dispute arises, unless that period is modified by written

9  agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the

10  position advanced by the United States shall be considered binding unless, within

11  15 days after the conclusion of the informal negotiation period, Defendant invokes

12  formal dispute resolution procedures as set forth below.

13      52.    Formal Dispute Resolution.  Defendant shall invoke formal dispute

14  resolution procedures, within the time period provided in the preceding Paragraph,

15  by serving on the United States, in accordance with Section XIV (Notices), a

16  written Statement of Position regarding the matter in dispute.  The Statement of

17  Position shall include, but may not necessarily be limited to, any supporting factual

18  data, analysis, or opinion supporting Defendant's position and any supporting

19  documentation relied upon by Defendant.

20      53.    The United States shall serve its Statement of Position within 45 days

21  of receipt of Defendant's Statement of Position.  The United States' Statement of

22  Position shall include, but may not necessarily be limited to, any factual data,

23  analysis, or opinion supporting its position and any supporting documentation

24  relied upon by the United States.  The United States' Statement of Position shall be

25  binding on Defendant, unless Defendant files a motion for judicial review of the

26  dispute in accordance with the following Paragraph.

27      54.    Defendant may seek judicial review of the dispute by filing

28

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

985842.1

1   with the Court and serving on the United States, in accordance with Section XIV of

2   the Decree (Notices), a motion requesting judicial resolution of the dispute.  The

3   motion must be filed within 10 days of receipt of the United States' Statement of

4   Position pursuant to the preceding Paragraph.  The motion shall contain

5   Defendant's written statement of Defendant's position on the matter(s) in dispute,

6   including any supporting factual data, analysis, opinion, or documentation, and

7   shall set forth the relief requested and any schedule within which the dispute must

8   be resolved for orderly implementation of the Decree.

9          55.    The United States shall respond to Defendant's motion within the time

10  period allowed by the Local Rules of this Court.  Defendant may file a reply

11  memorandum, to the extent permitted by the Local Rules.

12         56.    In any dispute brought under Paragraph 54, Defendant shall bear the

13  burden of demonstrating that its position complies with the Consent Decree and the

14  Act and that Defendant is entitled to relief under applicable law.  The United States

15  reserves the right to argue that its position is reviewable only on the administrative

16  record and must be upheld unless arbitrary and capricious or otherwise not in

17  accordance with law and Defendant reserves the right to contest such argument.

18         57.    The invocation of dispute resolution procedures under this Section

19  shall not, by itself, extend, postpone, or affect in any way any obligation of

20  Defendant under this Decree.  Stipulated penalties with respect to the disputed

21  matter shall continue to accrue from the first day of noncompliance, but payment

22  shall be stayed pending resolution of the dispute as provided in Paragraph 40.  If

23  Defendant does not prevail on the disputed issue, stipulated penalties shall be

24  assessed and paid as provided in Section VIII (Stipulated Penalties).

25                          **XI.  RIGHT OF ENTRY**

26         58.    EPA and its representatives, including its attorneys, contractors, and

27  consultants, shall have the right of entry into the Facility at all reasonable times,

28  upon presentation of official credentials.  This provision in no way limits or affects

CONSENT DECREE OF PLAINTIFF AND
                                                       DEFENDANT

1   any right of entry and inspection, or any right to obtain information, held by the

2   EPA pursuant to applicable federal laws, regulations, or permits, nor does it limit or

3   affect any duty or obligation of Defendant to maintain documents, records, or other

4   information imposed by applicable federal or state laws, regulations, or permits.

5   ## XII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

6   59.     This Decree resolves the civil claims of the United States for the

7   violations alleged in the Complaint through the date of lodging of this Decree.

8   60.     The United States reserves all legal and equitable remedies available

9   to enforce the provisions of this Consent Decree, except as expressly stated in

10  Paragraph 59.  This Consent Decree shall not be construed to limit the rights of the

11  United States to obtain penalties or injunctive relief under the Act or implementing

12  regulations, or under other federal laws, regulations, or permit conditions, except as

13  expressly specified in Paragraph 59.  The United States further reserves all legal

14  and equitable remedies to address any imminent and substantial endangerment to

15  the public health or welfare or the environment arising at, or posed by, Defendant's

16  Facility, whether related to the violations addressed in this Consent Decree or

17  otherwise.

18  61.     In any subsequent administrative or judicial proceedings initiated by

19  the United States for injunctive relief, civil penalties, or other appropriate relief

20  relating to the Facility, Defendant shall not assert, and may not maintain, any

21  defense or claim based upon the principles of waiver, res judicata, collateral

22  estoppel, issue preclusion, claim preclusion, claim-splitting, or any other defenses

23  based upon the contention that the claims raised by the United States in the

24  subsequent proceeding were or should have been brought in the instant case, except

25  with respect to claims that have been specifically resolved pursuant to Paragraph 59

26  of this Section.

27  62.     This Consent Decree is not a permit, or a modification of any permit,

28  under any federal, State or local laws or regulations.  Defendant is responsible for

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

1   achieving and maintaining complete compliance with all applicable federal, state,

2   and local laws, regulations, and permits.  Defendant's compliance with this Decree

3   shall be no defense to any action commenced pursuant to any such laws,

4   regulations, or permits, except as set forth herein.

5   63.   The United States does not, by its consent to the entry of this Decree,

6   warrant or aver in any manner that Defendant's compliance with any aspect of this

7   Decree will result in compliance with provisions of the Act, 42 U.S.C. §§ 7401 *et*

8   *seq.,* or with any other provisions of federal, state, or local laws, regulations, or

9   permits.

10   64.   This Consent Decree does not limit or affect the rights of Defendant

11   or of the United States against any third parties not party to this Consent Decree,

12   nor does it limit the rights of third parties not party to this Consent Decree against

13   Defendant, except as otherwise provided by law.

14   65.   This Consent Decree shall not be construed to create rights in, or grant

15   any cause of action to, any third party not party to this Consent Decree.

16   **XIII.  COSTS**

17   66.   The Parties shall bear their own costs of this action, including attorney

18   fees, except that the United States shall be entitled to collect the costs (including

19   attorney fees) incurred in any action necessary to collect any portion of the civil

20   penalty or any stipulated penalties due but not paid by Defendant.

21   **XIV.  NOTICES**

22   67.   Unless otherwise specified herein, whenever notifications,

23   submissions, or communications are required by this Consent Decree, they shall be

24   made in writing and addressed as follows:

25

26

27   **As to the United States:**

28

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

985842.1

<u>U.S. DOJ</u>

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re:  DOJ No. 90-5-2-1-09021

<u>U.S. EPA</u>

David H. Kim
Assistant Regional Counsel
U.S. EPA - Region IX
75 Hawthorne Street (ORC-3)
San Francisco, CA 94105
Kim.David@epamail.epa.gov

Charles Aldred
Air Division
U.S. EPA – Region IX
75 Hawthorne Street (AIR-5)
San Francisco, CA 94105
Aldred.Charles@epamail.epa.gov

**As to Settling Defendant:**

Gregory Knapp
Environmental Manager
Riverside Cement Company
19409 National Trails Hwy
Oro Grande, CA 92368
GKnapp@txi.com

Fred Anderson
Riverside Cement Company
1341 W. Mockingbird Lane
Dallas, TX 75247
FAnderson@txi.com

68.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

69.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

- 21 -

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

985842.1

## XV.  EFFECTIVE DATE

70.     The Effective Date of this Decree shall be the date upon which this Decree is entered by the Court.

## XVI.  RETENTION OF JURISDICTION

71.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X (Dispute Resolution) and XVII (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

72.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree it shall be effective only upon approval by the Court.

73.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution) of this Decree, provided, however, that, instead of the burden of proof provided by Paragraph 54, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII.  TERMINATION

74.     This Consent Decree may be terminated 30 days after Defendant notifies the United States in accordance with the procedures set forth in Section VII (Reporting Requirements) that Defendant has surrendered the operating permits for the Old Cement Kilns, provided that Defendant has fulfilled all other obligations of this Decree, including performance of the requirements in Section VI, payment of the civil penalty under Section V, and payment of any outstanding stipulated penalties required by Section VIII.  The Parties shall file with the Court an appropriate stipulation reciting that the requirements of the Consent Decree have

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

1  been met and requesting termination of the Decree.  Any dispute between the

2  Parties arising under this Paragraph shall first be addressed through informal

3  dispute resolution procedures as set forth in Paragraph 51 and, if such dispute is not

4  resolved within 30 days after Defendant sends the United States a written Notice of

5  Dispute under Paragraph 51, Defendant may file a motion to terminate the Decree.

## XIX.  PUBLIC PARTICIPATION

7      75.    This Consent Decree shall be lodged with the Court for a period of not

8  less than 30 days for public notice and comment in accordance with 28 C.F.R.

9  § 50.7.  The United States reserves the right to withdraw or withhold its consent if

10  the comments regarding the Consent Decree disclose facts or considerations

11  indicating that the Consent Decree is inappropriate, improper, or inadequate.

12      76.    Defendant consents to entry of this Consent Decree without further

13  notice and agrees not to withdraw from or oppose entry of this Consent Decree by

14  the Court or to challenge any provision of the Decree, unless the United States has

15  notified Defendant in writing that it no longer supports entry of the Decree.

## XX.  SIGNATORIES/SERVICE

17      77.    The undersigned signatories each represent that he or she is fully

18  authorized to enter into the terms and conditions of this Decree and to execute and

19  legally bind the Party he or she represents to this document.

20      78.    This Consent Decree may be signed in counterparts, and its validity

21  shall not be challenged on that basis.

22      79.    Defendant agrees to accept service of process by mail with respect to

23  all matters arising under or relating to this Consent Decree and to waive the formal

24  service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil

25  Procedure and any applicable Local Rules of this Court.

## XXI.  INTEGRATION

27      80.    This Consent Decree constitutes the final, complete, and exclusive

28  agreement and understanding among the Parties with respect to the settlement

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

### XXII.  FINAL JUDGMENT

81.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.+

SO ORDERED AND ENTERED.

This the 07 day of July, 2008.

_____
United States District Judge

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

985842.1

The undersigned parties enter into this Consent Decree in the matter of the <u>United States of America v. Riverside Cement Company</u>:

**For Plaintiff United States of America, U.S. DOJ:**

Date: _____          s/ Ellen Mahan_____
                          ELLEN MAHAN
                          Deputy Chief
                          Environmental Enforcement Section
                          Environment and Natural Resources Division
                          U.S. Department of Justice

Date: 2/15/08___          s/ James W. Beers, Jr._____
                          JAMES W. BEERS, JR.
                          Environmental Enforcement Section
                          Environment and Natural Resources Division
                          U.S. Department of Justice
                          P.O. Box 7611
                          Washington, DC 20044-7611

                          THOMAS P. O'BRIEN
                          United States Attorney
                          MONICA MILLER
                          Assistant United States Attorney
                          Central District of California

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

985842.1

1

**For Plaintiff United States of America, U.S. EPA**

2

3    Date: 2/8/08                    s/ Nancy J. Marvel

4                                    GRANTA Y. NAKAYAMA
                                     Assistant Administrator
5                                    Office of Enforcement and Compliance Assurance
6                                    U.S. Environmental Protection Agency
                                     1200 Pennsylvania Avenue, NW
7                                    Washington, DC 20004

8

9    Date:  19 Feb. 2008             s/ Wayne Nastri
                                     WAYNE NASTRI
10                                   Regional Administrator
                                     U.S. Environmental Protection Agency
11                                   Region IX
                                     75 Hawthorne Street
12                                   San Francisco, CA 94105
13

14

15   Of Counsel:

16   David H. Kim
     California Bar # 200654
17   Assistant Regional Counsel
     U.S. EPA – Region IX
18   75 Hawthorne Street
     San Francisco, CA 94105
19   Telephone:  (415) 972-3882
     E-mail:  Kim.David@epa.gov

20

21

22

23

24

25

26

27

28

- 26 -                        CONSENT DECREE OF PLAINTIFF AND
                                                    DEFENDANT

1   **For Defendant Riverside Cement Company:**

2

3   Date: <u>Jan. 29, 2008</u>          <u>s/ Phil Gaynor</u>

4                                       PHIL GAYNOR
                                        Assistant General Manager - Production
5                                       Riverside Cement Company
                                        19409 National Trails Highway
6                                       Oro Grande, CA 92368

7

8   Date: <u>1/31/08</u>               <u>s/ Patrick J. Cafferty, Jr.</u>
                                        PATRICK J. CAFFERTY, JR.
9                                       Munger, Tolles, & Olson LLP
                                        560 Mission Street
10                                      Twenty-Seventh Floor
                                        San Francisco, CA 94105-2907
11
                                        *Attorney for Defendant*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE OF PLAINTIFF AND
                                        DEFENDANT

985842.1

**EXHIBIT A**
**Riverside Cement Oro Grande Plant**
**Current Plant Dust Collectors (710,000 ACFM)**

| Equipment | | Equipment No. | ACFM | Permit No. | Opacity Limit |
|---|---|---|---|---|---|
| Tube Mill #1 & #2 DC | DC 3 | 45-003 | 10,300 | C001699 | 10% |
| Kiln 6&7 Feed system | DC 1 | 44-401 | 10,700 | C001724 | 10% |
| Weigh Hoppers 1,2,3 DC | DC 10 | 47-010 | 11,200 | C000160 | 10% |
| Raw Mill 5 DC | DC 5 | 42-005 | 11,230 | C000206 | 10% |
| Kiln 1-5 Feed System | DC 5 | 44-005 | 12,000 | C001722 | 10% |
| Clinker Bin 1,2,3 DC | DC 8 | 45-008 | 13,750 | C000204 | 10% |
| Crushing System Primary | DC-1 | 36-001 | 14,000 | C000138 | 20% |
| Alleviator DC Raw Material storage silos | DC 23 | 42-023 | 14,560 | C000220 | 10% |
| Kiln 1-5 Feed System | DC 4 | 44-004 | 16,000 | C001721 | 10% |
| Raw Mill 6 DC | DC 19 | 42-019 | 18,740 | C000207 | 10% |
| Raw Mill 1 Separator DC | DC 15 | 42-015 | 19,650 | C000143 | 10% |
| Raw Mill 2 Separator DC | DC 16 | 42-016 | 19,650 | C000146 | 10% |
| Raw Mill 3 Separator DC | DC 17 | 42-017 | 19,650 | C000151 | 10% |
| Raw Mill 4 Separator DC | DC 18 | 42-018 | 19,650 | C000154 | 10% |
| Crushing System S Hammermill | DC-3 | 36-003 | 22,000 | C000139 | 20% |
| Kiln 6 Clinker cooler baghouse | | 44-402 | 55,640 | C000178 | 10% |
| Kiln 7 clinker cooler baghouse | BHC 7 | 44-403 | 55,640 | C000187 | 10% |
| Kiln 1 Baghouse | BH 1 | 44-151 | 70,000 | C000168 | 20% |
| Kiln 2 Baghouse | BH 2 | 44-152 | 70,000 | C000170 | 20% |
| Kiln 3 Baghouse | BH 3 | 44-153 | 70,000 | C000172 | 20% |
| Kiln 4 Baghouse | BH 4 | 44-154 | 70,000 | C000174 | 20% |
| Kiln 5 Baghouse | BH 5 | 44-155 | 70,000 | C000176 | 20% |
| Finish Mill #4 & #5 DC | DC 14 | 45-014 | 90,000 | C001956 | 10% |
| Kiln 6 baghouse | DC 6 | 44-404 | 95,000 | C000180 | 20% |
| Kiln 7 baghouse | BH 7 | 44-407 | 95,000 | C000186 | 20% |

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

**EXHIBIT B**
**Riverside Cement Oro Grande Plant**
**Current Dust Collectors (<10,000 ACFM)**

| Equipment | Equipment No. | ACFM | Permit No. | Opacity Limit |
|---|---|---|---|---|
| CEMSTAR Dust Collector K1-5 | DC 11 | 860 | C007346 | 10% |
| Clinker Reclaimer DC | DC 16 | 1,000 | C002224 | 10% |
| Clinker Reclaimer DC | DC 17 | 1,000 | C002225 | 10% |
| Kiln 6 baghouse | DC 6 | 44-404 | 1,200 | C000189 | 10% |
| Kiln 7 baghouse | DC 7 | 44-405 | 1,200 | C000185 | 10% |
| Finish Mill #3 DC | DC 6 | 45-006 | 1,260 | C000202 | 10% |
| CEMSTAR Dust Collector K6-7 | DC 7 | 1,288 | C007345 | 10% |
| Kiln 6 Clinker cooler bag filter for dust bin | BF-1 | 44-408 | 1,412 | C000191 | 10% |
| Kiln 1-5 50 Ton dust bin DC Screw conveyor to 50 ton Dust bin | 44-010 | 1,419 | C004512 | 10% |
| BC 21to Stacker 3 | DC 8 | 41-058 | 1,500 | C002686 | 10% |
| Skipulter 2 SC 5 and Vibrating conveyor #2to BC 13 DC | DC 9 | 44-409 | 1,500 | C002223 | 10% |
| Truck Loadout DC | DC 19 | 47-202 | 1,650 | C001774 | 10% |
| Crushing System BC10 TO BC12 | DC-7 | 41-027 | 1,780 | C001716 | 20% |
| Clinker storage sample system DC | DC 3 | 41-053 | 2,000 | C001707 | 10% |
| From BC 23to BC 24 | DC 9 | 41-060 | 2,250 | C002684 | 10% |
| From BC 22 to BC 24 | DC 10 | 41-059 | 2,250 | C002685 | 10% |
| Rock Transfer System BC12 TO BC 13 | DC-8 | 41-028 | 2,250 | C001773 | 20% |
| Rock Transfer System BC11 TO BC 13 | DC-9 | 41-029 | 2,250 | C002222 | 20% |
| Rock Transfer System BC13 TO BC 14 | DC-1 | 41-021 | 2,750 | C001717 | 20% |
| Pit C pump Cyclone #3 DC | DC 3 | 47-003 | 2,880 | C001770 | 10% |
| Clinker storage bin vent | BV 9 | 44-080 | 3,000 | C001712 | 10% |
| From BC 24to BC 25 | DC 4 | 41-054 | 3,130 | C000198 | 10% |
| Rock Transfer System BC14 TO BC 15 | DC-2 | 41-022 | 3,130 | C001718 | 20% |
| Gypsum Conveyor 4 DC | DC 13 | 45-013 | 3,200 | C000196 | 10% |
| Alleviator DC Raw Material storage silos | DC 24 | 42-024 | 3,600 | C001579 | 10% |
| Alleviator DC Raw Material storage silos | DC 25 | 42-025 | 3,600 | C001580 | 10% |
| Alleviator DC Raw Material storage silos | DC 26 | 42-026 | 3,600 | C001581 | 10% |
| Kiln 1-5 Feed Silo DC | DC 1 | 44-001 | 3,740 | C000216 | 10% |
| 600 Ton Clinker Bin 1 baghouse | DC 18 | 4,000 | C004599 | 10% |
| SC 7 to Rail Loadout DC | DC 25 | 47-208 | 4,200 | C000164 | 10% |
| Clinker storage BC 19, BC 25, BC 26 DC | DC 1 | 41-051 | 4,350 | C001708 | 10% |

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

| | | | | | |
|---|---|---|---|---|---|
| Kiln 1-5 Feed Silo DC | DC 2 | 44-002 | 4,530 | C001720 | 10% |
| Dust Elevator 9 | DC 3 | 44-006 | 4,530 | C001705 | 10% |
| Coal/Coke crusher DC | DC 60 | 44-309 | 5,000 | C000314 | 10% |
| SC 7to surge bin DC | DC 2 | 47-002 | 5,000 | C000162 | 10% |
| Silos 1,2,3,4, DC | DC 26 | 47-209 | 5,300 | C001742 | 10% |
| Clinker storage BC 20 to Sample splitter | DC 2 | 41-052 | 5,360 | C001706 | 10% |
| Clinker / gypsum transfer  bin vent | BV 3 | 45-203 | 5,500 | C001704 | 10% |
| Clinker storage BC 18, BC 19, BC29 DC | DC 5 | 41-055 | 5,570 | C000194 | 10% |
| Silos 5,7,9,11 DC | DC 16 | 47-016 | 5,616 | C000219 | 10% |
| Rock Transfer System BC15 TO S Feed Bin | DC-22 | 42-022 | 5,620 | C001719 | 20% |
| Silos 21,22,23,24 DC | DC 18 | 47-201 | 6,500 | C001741 | 10% |
| Crushing System BC5 to BC7 | DC-4 | 36-004 | 6,600 | C001714 | 20% |
| Pit A pump Cyclone #1 DC | DC 7 | 47-007 | 6,790 | C001771 | 10% |
| Pit B ump Cyclone #2 DC | DC 8 | 47-008 | 6,790 | C001775 | 10% |
| Truck Loadout DC | DC 9 | 47-009 | 6,790 | C001772 | 10% |
| Finish Mill #1 DC | DC 1 | 45-001 | 7,650 | C000200 | 10% |
| Finish Mill #1 DC | DC 5 | 45-005 | 7,650 | C001701 | 10% |
| Tube Mill #3 & #4, Finish Mill Separator #2 DC | DC 4 | 45-004 | 7,650 | C001700 | 10% |
| Raw Mills 1 and 2 | DC 12 | 42-012 | 7,860 | C000147 | 10% |
| Raw Mill 3 DC | DC 14 | 42-014 | 7,860 | C000150 | 10% |
| Silos 6,8,10,12 DC | DC 17 | 47-017 | 7,875 | C001740 | 10% |
| Silo 13,14,15,16 DC | DC 15 | 47-015 | 7,875 | C001739 | 10% |
| Clinker / gypsum transfer  bin vent | BV 1 | 45-201 | 8,250 | C001702 | 10% |
| Clinker / gypsum transfer  bin vent | BV 2 | 45-202 | 8,250 | C001703 | 10% |
| Raw Mill 1 DC | DC 1 | 42-001 | 8,500 | C000142 | 10% |
| Raw Mill 2 DC | DC 2 | 42-002 | 8,500 | C000145 | 10% |
| Raw Mill 3 DC | DC 3 | 42-003 | 8,500 | C000149 | 10% |
| Raw Mill 4 DC | DC 4 | 42-004 | 8,500 | C000153 | 10% |
| Silo 18,19,20 DC | DC 7 | 47-007 | 9,300 | C001769 | 10% |
| Raw Mill 5 Separator DC | DC 5A | 42-006 | 9,360 | C000209 | 10% |
| Finish Mill  Separator #1 | DC 2 | 45-002 | 9,360 | C001698 | 10% |
| Aumond Wet Dust CollectorAumond to BC3 | | | 9,400 | C009044 | 10% |
| Silos 1,2,3,4 to SC #1 DC | DC 1 | 47-001 | 9,600 | C001776 | 10% |

- 30 -

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

985842.1